FORT TRUMBULL CONSERVANCY, LLC *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF NEW LONDON
(SC 16932)
(SC 16933)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 19—officially released October 21, 2003

*Scott W. Sawyer*, for the appellant (plaintiff).

*Thomas J. Londregan*, with whom was *Jeffrey T. Londregan*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. This opinion addresses two appeals arising out of a similar factual background. The plaintiff, Fort Trumbull Conservancy, LLC, appeals from two judgments of the trial court dismissing the plaintiff's appeals from two coastal site plan reviews conducted by the defendant, the planning and zoning commission of the city of New London (commission), pursuant to the Coastal Management Act (act), General Statutes § 22a-90 et seq. The plaintiff contends that the trial court improperly dismissed its appeals for lack of subject matter jurisdiction. On appeal, the plaintiff claims that: (1) the commission's decision on a coastal site plan review performed in conjunction with a referral under General Statutes § 8-24[1] is an appealable final

---

[1] General Statutes § 8-24 provides: "No municipal agency or legislative body shall (1) locate, accept, abandon, widen, narrow or extend any street, bridge, parkway or other public way, (2) locate, relocate, substantially improve, acquire land for, abandon, sell or lease any airport, park, playground, school or other municipally owned property or public building, (3) locate or extend any public housing, development, redevelopment or urban renewal project, or (4) locate or extend public utilities and terminals for water, sewerage, light, power, transit and other purposes, until the proposal to take such action has been referred to the commission for a report. Notwithstanding the provisions of this section, a municipality may take final action approving an appropriation for any proposal prior to the approval of the proposal by the commission pursuant to this section. The failure of the commission to report within thirty-five days after the date of official submission of the proposal to it for a report shall be taken as approval of the proposal. In the case of the disapproval of the proposal by the commission the reasons therefor shall be recorded and transmitted to the legislative body of the municipality. A proposal disapproved by the commission shall be adopted by the municipality or, in the case of disapproval of a proposal by the commission subsequent to final action by a municipality approving an appropriation for the proposal and the method of financing of such appropriation, such final action shall be effective, only after the subsequent approval of the proposal by (A) a two-thirds vote of the town council where one exists, or a majority vote of those present and voting in an annual or special town meeting, or (B) a two-thirds vote of the representative town meeting or city council or the warden and burgesses, as the case may be.

decision; and (2) the plaintiff, which intervened in the administrative proceedings before the commission pursuant to General Statutes § 22a-19,[2] can appeal a coastal site plan review performed in conjunction with a report pursuant to § 8-24 because of the plaintiff's status as an intervenor under § 22a-19.[3] We conclude that the coastal site plan reviews conducted by the commission under the act were integral parts of the reports issued by the commission pursuant to § 8-24 and therefore are not subject to appeal. We further conclude that the plaintiff could not bring the appeals based solely on its status as an intervenor under § 22a-19. Accordingly, we affirm the judgments of the trial court.

The following facts and procedural history are relevant to the appeals before us. The city of New London (city), through an implementing agency, the New Lon-

The provisions of this section shall not apply to maintenance or repair of existing property, public ways or buildings."

[2] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[3] As an alternate ground to affirm, the commission claims that the plaintiff's appeals are moot. This was one of the grounds for the motion to dismiss filed in the trial court, however, the trial court did not address the mootness claim. Because we affirm the judgments of the trial court on the principal grounds addressed by both parties, we do not address the mootness claim.

don Development Corporation (development corporation), established a municipal development plan for the Fort Trumbull area of the city. The Fort Trumbull area is a ninety acre peninsula in the southeast region of New London bordering the Thames River. Historically, it has supported residential, commercial and industrial uses. The city formulated a municipal development plan that envisioned water enhanced and water dependent uses designed to revitalize the local economy while retaining the neighborhood's historic character. Specifically, the municipal development plan contemplated a series of office, hotel, residential and recreational facilities. This development effort included a number of municipal improvements, including the two that give rise to the present appeals. The facts specific to each of the two appeals presently before us follow.

On or about July 25, 2001, the development corporation, on behalf of the city council, referred a proposal for the municipal construction of certain roads and infrastructure improvements for the Fort Trumbull area to the commission for the issuance of a report pursuant to § 8-24. Because the site of the proposed infrastructure project was within the "coastal area," as defined by General Statutes § 22a-94,[4] the development corpora-

[4] General Statutes § 22a-94 provides in relevant part: "(a) The Connecticut coastal area shall include the land and water within the area delineated by the following: The westerly, southerly and easterly limits of the state's jurisdiction in Long Island Sound; the towns of Greenwich, Stamford, Darien, Norwalk, Westport, Fairfield, Bridgeport, Stratford, Shelton, Milford, Orange, West Haven, New Haven, Hamden, North Haven, East Haven, Branford, Guilford, Madison, Clinton, Westbrook, Deep River, Chester, Essex, Old Saybrook, Lyme, Old Lyme, East Lyme, Waterford, New London, Montville, Norwich, Preston, Ledyard, Groton and Stonington.

"(b) Within the coastal area, there shall be a coastal boundary which shall be a continuous line delineated on the landward side by the interior contour elevation of the one hundred year frequency coastal flood zone, as defined and determined by the National Flood Insurance Act, as amended (USC 42 Section 4101, P.L. 93-234), or a one thousand foot linear setback measured from the mean high water mark in coastal waters, or a one thousand foot linear setback measured from the inland boundary of tidal wetlands mapped

tion also submitted a coastal site plan application[5] for a coastal site plan review pursuant to General Statutes § 22a-105 (b) (5).[6]

Both the coastal site plan application and the referral pursuant to § 8-24 were discussed at several of the commission's meetings, in which the public was invited to participate. The plaintiff, a limited liability corporation composed of residents, homeowners and taxpayers who reside in the Fort Trumbull area of the city, intervened in the commission's proceedings pursuant to § 22a-19. Following a special meeting on September 25, 2001, a two part motion was made by the commission's vice-chairman to approve the referral pursuant to § 8-24 and to approve the coastal site plan review pursuant to § 22a-105 (b) (5). On a single vote, the motion was approved by a vote of five to two.

The plaintiff appealed from the commission's decision to the Superior Court. Thereafter, the trial court

under section 22a-20, whichever is farthest inland; and shall be delineated on the seaward side by the seaward extent of the jurisdiction of the state. . . ."

[5] This application ultimately gave rise to the appeal in Docket No. SC 16932 (infrastructure appeal).

[6] General Statutes § 22a-105 (b) provides: "The following site plans, plans and applications for activities or projects to be located fully or partially within the coastal boundary and landward of the mean high water mark shall be defined as 'coastal site plans' and shall be subject to the requirements of this chapter: (1) Site plans submitted to a zoning commission in accordance with section 22a-109; (2) plans submitted to a planning commission for subdivision or resubdivision in accordance with section 8-25 or with any special act; (3) applications for a special exception or special permit submitted to a planning commission, zoning commission or zoning board of appeals in accordance with section 8-2 or with any special act; (4) applications for a variance submitted to a zoning board of appeals in accordance with subdivision (3) of section 8-6 or with any special act, and (5) a referral of a proposed municipal project to a planning commission in accordance with section 8-24 or with any special act."

granted the commission's motion to dismiss for lack of subject matter jurisdiction, ruling that the court lacked jurisdiction to hear an appeal from a report issued pursuant to § 8-24 because the report is not a final decision from which an appeal can be taken. The trial court further concluded that the plaintiff could not appeal from the coastal site plan approval because it also was approved pursuant to § 8-24 and therefore was unappealable. Additionally, the trial court concluded that the plaintiff's status as an intervenor pursuant to § 22a-19 did not provide the plaintiff with a right of appeal.

The facts of the second appeal before us are similar. In August, 2001, the development corporation, on behalf of the city council, referred a proposal for the municipal construction of a riverwalk, a 1500 foot paved walkway running along the Thames River in the Fort Trumbull area, to the commission for the issuance of a report pursuant to § 8-24. In September, 2001, the development corporation filed an application for a coastal site plan review with the commission because the site of the riverwalk was within the coastal area.[7] The referral pursuant to § 8-24 and the coastal site plan application were discussed at several subsequent commission meetings. As with the infrastructure appeal, the plaintiff intervened in the commission's proceedings pursuant to § 22a-19. On November 29, 2001, a single motion was made to approve the coastal site plan and the referral pursuant to § 8-24. The motion was approved by a unanimous vote of the commission.

The plaintiff appealed from the commission's decision to the Superior Court. The trial court granted the commission's motion to dismiss the appeal, adopting the same rationale as set forth in its memorandum of

---

[7] This application ultimately gave rise to the appeal in Docket No. SC 16933 (riverwalk appeal).

decision on the motion to dismiss the infrastructure appeal.

Subsequently, the plaintiff appealed from the judgments of dismissal in both the infrastructure appeal and the riverwalk appeal to the Appellate Court. We transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The plaintiff first claims that the trial court improperly dismissed both of the plaintiff's appeals from the coastal site plan reviews for the Fort Trumbull area on the basis that the reviews were part and parcel of the reports issued pursuant to § 8-24. The plaintiff contends that its appeals should not have been dismissed for lack of subject matter jurisdiction because coastal site plan reviews result in final decisions that can be appealed despite having been conducted in conjunction with reports issued pursuant to § 8-24. The plaintiff concedes that there is no right of appeal from reports issued with regard to § 8-24 submissions. The plaintiff claims that a referral pursuant to § 8-24 and a coastal site plan review are two distinct inquiries, which must be considered separately, and that the coastal site plan review can be challenged separately.[8] The commission responds that the trial court correctly decided that the coastal site plan reviews and the § 8-24 submissions are merely two parts of the same overall inquiry. We agree with the commission.

We begin by setting forth the standard of review that governs our examination of these issues. The plaintiff's claim presents a question of statutory interpretation "over which our review is plenary." *Waterbury* v. *Washington*, 260 Conn. 506, 547, 800 A.2d 1102 (2002). "The

[8] The plaintiff contends that it is appealing only from the commission's decisions concerning the coastal site plan reviews, and not from the § 8-24 zoning referrals.

process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport,* [231 Conn. 418, 431, 650 A.2d 557 (1994)]. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Bender* v. *Bender,* [258 Conn. 733, 741, 785 A.2d 197 (2001)]. Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive

the extratextual sources of meaning will have to be in order to yield a different meaning." (Emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We always begin our analysis with the language of the relevant statutes. The plaintiff claims that a coastal site plan review, pursuant to the act, is separate and distinct from a review performed by the commission pursuant to § 8-24. Thus, we consider the text of both statutes.

Before analyzing § 8-24, we note that General Statutes § 8-2 (a)[9] provides in relevant part that, "[a]ny city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations." The city, acting pursuant to § 8-2 (a), has exempted city property from the applicability of its zoning regulations by adopting a regulation that provides that the "Zoning Regulation[s] shall not apply to

[9] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. Such bulk regulations may allow for cluster development as defined in section 8-18. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. . . . Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

municipal property owned or leased by the [c]ity . . . for public purposes . . . except that municipal building and site development plans shall be approved by the [commission] in accordance with Chapter 126, Section 8-24 of the Connecticut General Statutes . . . ." New London Zoning Regs., art. I, § 120.4.

Section 8-24[10] provides that "[n]o municipal agency or legislative body shall" make municipal improvements "until the proposal to take such action has been referred to the commission for a report" approving or disapproving of the proposal. In the event of a report disapproving the proposal, the municipality nevertheless may proceed with the improvements on "subsequent approval of the proposal by (A) a two-thirds vote of the town council where one exists, or a majority vote of those present and voting in an annual or special town meeting, or (B) a two-thirds vote of the representative town meeting or city council or the warden and burgesses, as the case may be." General Statutes § 8-24. The report issued by the commission therefore has no binding effect on the municipality.

We next address the language of the act, which was intended to "insure that the development, preservation or use of the land and water resources of the coastal area proceeds in a manner consistent with the capability of the land and water resources to support development, preservation or use without significantly disrupting either the natural environment or sound economic growth . . . ." General Statutes § 22a-92 (a) (1). In the legislative findings provision of the act, the General Assembly noted that, "[t]he key to improved public management of Connecticut's coastal area is coordination at all levels of government and consideration by municipalities of the impact of development on both coastal resources and future water-dependent

---

[10] See footnote 1 of this opinion for the full text of § 8-24.

development opportunities when preparing plans and regulations and reviewing municipal and private development proposals . . . ." General Statutes § 22a-91 (6).[11] "In order to carry out the policies and provisions of this [coastal management] chapter and to provide more specific guidance to coastal area property owners and developers, coastal municipalities may adopt a municipal coastal program for the area within the coastal boundary and landward of the mean high water mark." General Statutes § 22a-101 (a). In addition, "[c]oastal municipalities shall undertake coastal site plan reviews in accordance with the requirements of this chapter." General Statutes § 22a-105 (a).

---

[11] General Statutes § 22a-91 provides: "The General Assembly finds that:

"(1) The waters of Long Island Sound and its coastal resources, including tidal rivers, streams and creeks, wetlands and marshes, intertidal mudflats, beaches and dunes, bluffs and headlands, islands, rocky shorefronts, and adjacent shorelands form an integrated natural estuarine ecosystem which is both unique and fragile;

"(2) Development of Connecticut's coastal area has been extensive and has had a significant impact on Long Island Sound and its coastal resources;

"(3) The coastal area represents an asset of great present and potential value to the economic well-being of the state, and there is a state interest in the effective management, beneficial use, protection and development of the coastal area;

"(4) The waterfront of Connecticut's major urban ports is underutilized and many existing urban waterfront uses are not directly dependent on proximity to coastal waters;

"(5) The coastal area is rich in a variety of natural, economic, recreational, cultural and aesthetic resources, but the full realization of their value can be achieved only by encouraging further development in suitable areas and by protecting those areas unsuited to development;

"(6) The key to improved public management of Connecticut's coastal area is coordination at all levels of government and consideration by municipalities of the impact of development on both coastal resources and future water-dependent development opportunities when preparing plans and regulations and reviewing municipal and private development proposals; and

"(7) Unplanned population growth and economic development in the coastal area have caused the loss of living marine resources, wildlife and nutrient-rich areas, and have endangered other vital ecological systems and scarce resources."

A significant key to understanding the act is to determine what triggers a coastal site plan review. The answer is found in General Statutes § 22a-105, which provides, in subsection (a), that "[c]oastal municipalities shall undertake coastal site plan reviews in accordance with the requirements of this chapter." Section 22a-105 (b) provides: "The following site plans, plans and applications for activities or projects to be located fully or partially within the coastal boundary and landward of the mean high water mark shall be defined as 'coastal site plans' and shall be subject to the requirements of this chapter: (1) Site plans submitted to a zoning commission in accordance with section 22a-109; (2) plans submitted to a planning commission for subdivision or resubdivision in accordance with section 8-25 or with any special act; (3) applications for a special exception or special permit submitted to a planning commission, zoning commission or zoning board of appeals in accordance with section 8-2 or with any special act; (4) applications for a variance submitted to a zoning board of appeals in accordance with subdivision (3) of section 8-6 or with any special act, and (5) *a referral of a proposed municipal project to a planning commission in accordance with section 8-24 or with any special act.*" (Emphasis added.) From the language of § 22a-105 (b), it is clear that a referral under § 8-24 for a municipal project located within the coastal boundary is a coastal site plan that must be reviewed in accordance with the provisions of the act. This conclusion is confirmed by reference to General Statutes § 22a-93 (13), which defines coastal site plans as "the site plans, applications *and project referrals listed in section 22a-105* . . . ." (Emphasis added.)

The question we next must resolve is whether the coastal site plan review conducted by the commission in conjunction with a § 8-24 referral is simply part of the § 8-24 referral or whether, as the plaintiff contends,

it is an independent matter. Although the language of each of the various sections of the act is not conclusive, we conclude that the text of the various sections, taken together, strongly suggests that a coastal site plan review was intended to be part and parcel of the planning or zoning application or referral that triggers the coastal site plan review, including a referral under § 8-24.

We begin with the definition of coastal site plan contained in § 22a-105 (b), and referenced in § 22a-93 (13), which provides specifically that a referral pursuant to § 8-24, when located within the coastal area, "shall be defined" as a coastal site plan. See footnote 6 of this opinion. This language evinces an intent to incorporate coastal site review into the existing planning or zoning procedures for reviewing applications and referrals. If the legislature had intended that each of the applications and referrals listed in § 22a-105 (b) trigger a separate coastal site plan review, it would not have included within the definition of coastal site plan each of the types of planning or zoning applications and referrals listed in §§ 22a-105 (b) and 22a-93 (13). Moreover, if the legislature's intent had been to require a separate coastal site plan review, it likely would have incorporated into the act specific provisions tailored to site plan approval similar to those found in General Statutes § 8-3 (g),[12] which governs site plan review generally.

[12] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. A decision to deny or modify a site plan shall set forth the reasons for such denial or modification. A copy of any decision shall be sent by certified

Moreover, § 22a-105 (b) (4)[13] provides further insight into the proper interpretation of the act. Section 22a-105 (b) (4) lists as a coastal site plan an application for a variance to a zoning board of appeals. A zoning board of appeals, however, has only those powers authorized under General Statutes § 8-6 (a).[14] Those powers do not include the authority to review a site plan. A zoning board of appeals therefore does not have the authority to conduct site plan review, beyond the process of ruling on a variance. The legislature is presumed to act

mail to the person who submitted such plan within fifteen days after such decision is rendered. The zoning commission may, as a condition of approval of any modified site plan, require a bond in an amount and with surety and conditions satisfactory to it, securing that any modifications of such site plan are made or may grant an extension of the time to complete work in connection with such modified site plan. The commission may condition the approval of such extension on a determination of the adequacy of the amount of the bond or other surety furnished under this section. The commission shall publish notice of the approval or denial of site plans in a newspaper having a general circulation in the municipality. In any case in which such notice is not published within the fifteen-day period after a decision has been rendered, the person who submitted such plan may provide for the publication of such notice within ten days thereafter."

[13] See footnote 6 of this opinion for the text of § 22a-105 (b).

[14] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

with knowledge of existing statutes and with the intent to create one consistent body of laws. *St. George* v. *Gordon,* 264 Conn. 538, 553, 825 A.2d 90 (2003). The legislature therefore intended the coastal site plan review to be part of the planning or zoning application or § 8-24 referral and not a separate review.

Further evidence that the legislature did not intend a separate site plan review of coastal site plans is found in General Statutes § 22a-109 (a),[15] which negates the applicability of § 8-3 (g) to coastal site plan applications. Section 22a-109 (a) provides in part that "[r]eview of a coastal site plan under the requirements of this section shall supersede any review required by the municipality under subsection (g) of section 8-3 . . . ."

[15] General Statutes § 22a-109 (a) provides: "A coastal site plan shall be filed with the municipal zoning commission to aid in determining the conformity of a proposed building, use, structure, or shoreline flood and erosion control structure as defined in subsection (c), fully or partially within the coastal boundary, with the specific provisions of the zoning regulations of the municipality and the provisions of sections 22a-105 and 22a-106, and in the case of shoreline flood and erosion control structures, the provisions of sections 22a-359 to 22a-363, inclusive, and any regulations adopted thereunder. A coastal site plan required under this section may be modified or denied if it fails to comply with the requirements already set forth in the zoning regulations of the municipality and, in addition, the coastal site plan may be modified, conditioned or denied in accordance with the procedures and criteria listed in sections 22a-105 and 22a-106. A coastal site plan for a shoreline flood and erosion control structure may be modified, conditioned or denied if it fails to comply with the requirements, standards and criteria of sections 22a-359 to 22a-363, inclusive, and any regulations adopted thereunder. *Review of a coastal site plan under the requirements of this section shall supersede any review required by the municipality under subsection (g) of section 8-3 and shall be in addition to any applicable zoning regulations of any special district exercising zoning authority under special act.* The provisions of this section shall not be construed to limit the authority of the Commissioner of Environmental Protection under sections 22a-359 to 22a-363, inclusive." (Emphasis added.)

The legislative history of the act provides additional support for our interpretation. The lengthy legislative history attendant to the passage of the act demonstrates that the General Assembly's intent was that coastal site plan review be concluded concomitantly with the commission's review of the various planning or zoning applications listed in § 22a-105 (b), including § 8-24 referrals.

A brief overview of the history of the act informs our understanding of the legislative history. The act was enacted in two phases. In 1978, the General Assembly passed No. 78-152 of the 1978 Public Acts (P.A. 78-152), which created a skeleton statewide coastal management program and authorized further research and future legislation to incorporate municipal governance. Following the mandate of P.A. 78-152, numerous public hearings were held, many commission reports were circulated and various legislation was drafted. Ultimately, this process resulted in the adoption of No. 79-535 of the 1979 Public Acts, which codified the act's balance of authority for coastal management between the state and municipal governments. See, e.g., General Statutes §§ 22a-90 through 22a-113c.

The legislative history of the act in 1979 unequivocally reveals a deliberate effort to weave coastal site plan review into existing planning and zoning procedures. See 22 S. Proc., Pt. 15, 1979 Sess., pp. 5143–62. One comment in particular from the Senate floor is illustrative. Senator Frederick Knous, a proponent of the legislation underlying Public Act 79-535, succinctly summarized its purpose with the following statement: "[T]his proposal allows municipalities the authority, *through their existing planning and zoning* to evaluate impacts of developments on their coastal resources

through the site plan review. And *this review is designed to be compatible with existing planning and zoning procedures.*" (Emphasis added.) Id., p. 5161.

This intent to integrate coastal site plan review into the existing planning and zoning system is evident in committee reports underlying the act. Of particular note is a planning report prepared by the department of environmental protection. See Coastal Area Management Program, "Report to the Legislature's Committee on Coastal Management" (Dept. of Environmental Protection, September 1, 1978).[16] This report articulates a six step analysis incorporating coastal site plan review with existing municipal regulations.[17] Id., pp. 25–28. First and foremost, the report emphasizes that "[t]he review is . . . designed to be *compl[e]mentary to and compatible with existing planning and zoning procedures.*" (Emphasis added.) Id., p. 25. Specifically, the review is "designed to be *implemented by local planning and zoning commissions in the normal process of evaluating* . . . activities only when they occur within the coastal boundary . . . ." (Emphasis added.) Id.

Under this six step analysis, the applicant initiates the process as normally required under existing planning and zoning procedures. Id., p. 26. The local planning and zoning commission then reviews the proposal

---

[16] The planning report was prepared by the coastal area management program in response to P.A. 78-152. See Coastal Area Management Program, *supra*, pp. i–ii. Specifically, the report comments on previous drafts of legislation, incorporates comments from public hearings and makes recommendations regarding the actions to be taken to complete adoption of the act. Id.

[17] While this six step analysis was not expressly codified in the act, the analysis, coupled with the actual language present in the act, are strong evidence that the legislature intended the review process to follow an analogous format at the discretion of the municipality.

solely on the basis of the standard, municipal planning and zoning regulations. Id., p. 27. After this phase, the local planning and zoning commission makes a threshold determination of whether there exists sufficient potential for coastal impact to necessitate a comprehensive review. If a significant coastal impact is found, an assessment of the effects should be considered more fully in a thorough coastal site plan review.[18] Id. Next, the local planning and zoning commission analyzes the project as a whole; id.; and ultimately issues a decision "on the basis of standard planning and zoning requirements *and the coastal site plan review as applicable.*" (Emphasis added.) Id., p. 28.

The practical application of this framework is graphically depicted in a series of flow charts contained in the same report. Id., pp. 29–30. One chart entitled, "Building Permits Subject to Zoning Regulations," illustrates the then current, as of 1978, procedure for obtaining a building permit for projects outside the coastal boundary and demonstrates the proposed procedure for obtaining a permit for areas within the coastal boundary under the act. Id., p. 29, fig. 1. Another chart entitled, "Municipal Improvements," illustrates the then current procedure for obtaining approval of a municipal improvement pursuant to § 8-24 as well as the proposed procedure for municipal improvements within the coastal zone under the act. Id., p. 31, fig. 3.

Of particular relevance to our interpretation of the act are the differences in the flow charts for municipal improvements as indicated in figure three, as com-

---

[18] As ultimately enacted in the act by the legislature, the steps regarding the threshold determination of a potential coastal impact and the assessment of that impact were combined into a single step, coastal site plan review.

pared to applications by private applicants for properties in the coastal zone as indicated in figure one. See id., pp. 29, 31. Specifically, under the procedure proposed by the coastal area management program, when a private applicant seeks a building permit, figure one depicts the standard review for a building permit conducted by the local planning and zoning commission, followed by a coastal site plan review, resulting in one "regulatory decision." See id., p. 29, fig. 1. When a municipality proposes making an improvement, the initial consideration is analogous. Figure three begins with a referral pursuant to § 8-24, the standard for municipal improvements, followed by a coastal site plan review. The critical distinction is the next step; these reviews do not culminate in a "regulatory decision." Instead, the chart branches into two options, approval or rejection of the municipal proposal by the local planning and zoning commission. If that commission issues a report rejecting the proposal, the chart shows the proposal going on to the town or city council, which can override the report by a two-thirds majority. See id., p. 31, fig. 3.

The distinction is clear. Nonmunicipal project applications, such as those for building permits, result in regulatory decisions, which generally are appealable pursuant to § 8-8.[19] The result is the same regardless of whether a coastal site plan review is required. Similarly, because a report issued pursuant to § 8-24 does not

---

[19] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

result in a regulatory decision, the addition of a coastal site plan review does not alter the result. After conducting both zoning review and coastal site plan review, the local planning and zoning commission approves or disapproves the proposed municipal project. In both instances—building permit and § 8-24 referral—the result is the same; coastal site plan review becomes another component in the otherwise applicable planning or zoning process. Coastal site plan review does not result in a separate approval or decision.

Moreover, an opinion letter from the attorney general bolsters this point. See *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 545, 738 A.2d 604 (1999). In response to several questions by Stanley J. Pac, then commissioner of environmental protection, concerning interpretation of the act, the attorney general responded that, "[i]t is our opinion that any time any site plans, plans and applications are submitted for any or all of the five situations listed in § 22a-105 (b) for activities within the coastal boundary, *they shall become coastal site plans*, and must be appropriately reviewed under §§ 22a-105 (a) and 22a-106." (Emphasis added.) Opinions, Conn. Atty. Gen. No. 85-82 (December 11, 1985). The use of the word "become" in reference to the relationship between the situations enumerated in § 22a-105 (b) and a coastal site plan suggests inclusion of the coastal site plan within existing procedures. When a referral pursuant to § 8-24 "becomes" a coastal site plan, the result is a single inquiry under the aegis of § 8-24.

We therefore conclude that a coastal site plan review under the act is to be conducted as part of the planning

and zoning applications or as part of a § 8-24 referral as listed in § 22a-105 (b), and not as a separate application or proceeding. We note that our conclusion is consistent with dicta from two prior decisions of this court. "The act envisages a single review process, during which proposals for development within the coastal boundary will simultaneously be reviewed for compliance with local zoning requirements and for consistency with the policies of planned coastal management." (Internal quotation marks omitted.) *DeBeradinis* v. *Zoning Commission,* 228 Conn. 187, 196, 635 A.2d 1220 (1994); *Vartuli* v. *Sotire,* 192 Conn. 353, 358, 472 A.2d 336 (1984). In the present cases, therefore, the commission's review of the coastal site plans properly was conducted as part of the § 8-24 submissions and not as a separate proceeding.

The plaintiff correctly concedes that a report issued by a planning and zoning commission pursuant to a § 8-24 referral is purely advisory and is not appealable. This court previously has held that, although § 8-8 authorizes an appeal to a court from the actions of a planning and zoning commission, this right is limited to appeals of final decisions. *Sheridan* v. *Planning Board,* 159 Conn. 1, 10, 266 A.2d 396 (1969). In particular, we have stated that no appeal exists where a planning and zoning commission issues a decision that is merely preliminary and not binding without further action by a municipal agency. *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 561–62, 290 A.2d 348 (1971).

The commission's approval in the present cases of both municipal proposals pursuant to § 8-24, which

included coastal site plan reviews, were merely non-bonding recommendations to the city council. We therefore conclude that the trial court properly granted the commission's motions to dismiss on the basis that the commission's decisions on the § 8-24 submissions, which included coastal site plan reviews, were not appealable final decisions.

## II

The plaintiff's second claim is that, having intervened under § 22a-19, it was entitled to appeal from the commission's report pursuant to § 8-24 because of its status as an intervenor under § 22a-19. The plaintiff argues that the trial court acted improperly in concluding that no right to appeal was created by its intervenor status. We disagree.

This issue presents a question of statutory construction. We previously have recited the applicable standard for statutory interpretation in part I of this opinion, and we therefore begin our plenary review.

Section 22a-19 (a), which is part of our Environmental Protection Act, provides that "[i]n any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." Although § 22a-

19 (a) on its face is extremely broad regarding the parties who may intervene, the types of matters into which they can intervene, and the scope of the environmental issues that they may raise, it is silent as to the right of an intervenor to bring an appeal in a matter that is not otherwise appealable.

"We . . . note the rule of statutory construction that statutes in derogation of common law should receive a strict construction and [should not] be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 246 Conn. 223, 231, 717 A.2d 202 (1998). "In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001).

In providing broad rights of intervention to raise environmental issues, § 22a-19 is clearly in derogation of the common law relating to intervention. We therefore must construe § 22a-19 strictly. A review of the text of § 22a-19, as well as other sections of the Environmental Protection Act, reveals no language that even arguably suggests that the legislature intended to give environmental intervenors under § 22a-19 the right to appeal from administrative matters that are not otherwise appealable.

The plaintiff relies on *Waterbury* v. *Washington*, supra, 260 Conn. 506, for the proposition that its intervenor status confers a right to appeal. This reliance is misplaced. *Waterbury* concerned the interplay between

General Statutes §§ 22a-16[20] and 22a-18.[21] See id., 539–

[20] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

[21] General Statutes § 22a-18 provides: "(a) The court may grant temporary and permanent equitable relief, or may impose such conditions on the defendant as are required to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction.

"(b) If administrative, licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. In so remanding the parties the court may grant temporary equitable relief where necessary for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction and the court shall retain jurisdiction of the action pending completion of administrative action for the purpose of determining whether adequate consideration by the agency has been given to the protection of the public trust in the air, water or other natural resources of the state from unreasonable pollution, impairment or destruction and whether the agency's decision is supported by competent material and substantial evidence on the whole record.

"(c) If the agency's consideration has not been adequate, and notwithstanding that the agency's decision is supported by competent material and substantial evidence on the whole record, the court shall adjudicate the impact of the defendant's conduct on the public trust in the air, water or other natural resources of the state in accordance with sections 22a-14 to 22a-20, inclusive.

"(d) Where, as to any administrative, licensing or other proceeding, judicial review thereof is available, the court originally taking jurisdiction shall maintain jurisdiction for purposes of judicial review.

"(e) The court may award any person, partnership, corporation, associa-

46. Specifically, we concluded in *Waterbury* that § 22a-16, which authorizes an independent action to challenge environmental issues, contains no exhaustion requirement. Id., 545. The appeals in the present case are distinguishable in that they involve intervention under § 22a-19 and not a separate action under § 22a-16. *Waterbury* is therefore inapposite. We conclude that the trial court properly determined that the plaintiff had no right to appeal pursuant to § 22a-19 from the coastal site plan reviews conducted by the commission.

The judgments are affirmed.

In this opinion NORCOTT and PALMER, Js., concurred.

ZARELLA, J., with whom SULLIVAN, C. J., joins, concurring. I agree with the majority's conclusions in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting). The plain language of the coastal site plan review statutes, in my view, aptly demonstrates that the review undertaken in connection with these statutes is "part and parcel" of the report issued pursuant to General Statutes § 8-24. The majority's resort to legislative history in part I of its opinion, therefore, unnecessarily complicates the analysis contained therein.

tion, organization or other legal entity which maintains an action under section 22a-16 or intervenes as a party in an action for judicial review under section 22a-19, and obtains declaratory or equitable relief against the defendant, its costs, including reasonable costs for witnesses, and a reasonable attorney's fee."