## GEORGE L. FINLEY ET AL. *v.* INLAND WETLANDS COMMISSION OF THE TOWN OF ORANGE ET AL.
### (SC 18131)

Norcott, Zarella, Sullivan, Leheny and Aurigemma, Js.

Argued May 22—officially released October 14, 2008

14

*Marjorie Shansky,* for the appellants (plaintiffs).

*John F. Fallon,* with whom was *Brian M. Stone,* for the appellee (defendant Stew Leonard's Orange, LLC).

*Opinion*

SULLIVAN, J. The plaintiffs, George L. Finley, Barbara K. Schmidt and Vincent P. Schmidt, appeal[1] from the judgment of the trial court denying their appeal pursuant to General Statutes § 22a-43[2] from the decision of the named defendant, the inland wetlands commission of the town of Orange (commission), granting the application of the defendant Stew Leonard's Orange, LLC (Stew Leonard's),[3] for a permit to conduct regu-

---

[1] The Appellate Court granted certification for the plaintiffs to appeal from the judgment of the trial court to that court pursuant to General Statutes § 22a-43 (e) and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 22a-43 (a) provides in relevant part: "The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, a district or municipality or any person owning or occupying land which abuts any portion of land within, or is within a radius of ninety feet of, the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may, within the time specified in subsection (b) of section 8-8, from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. . . ."

[3] The commissioner of the department of environmental protection, Gina McCarthy, also is a defendant in this case, but she did not participate in this appeal. Although Stew Leonard's was the only defendant to file an appellee's brief in this appeal, counsel for the commission joined in the brief and participated in oral argument before this court. Hereafter, we refer to Stew Leonard's and the commission collectively as the defendants and individually by name.

lated activities pursuant to the Inland Wetlands and Watercourses Act, General Statutes § 22a-36 et seq. The plaintiffs claim that the trial court improperly determined that the commission's decision was supported by substantial evidence. We agree with the plaintiffs and, therefore, we reverse the judgment of the trial court.

The record reveals the following undisputed facts. In 2004, Stew Leonard's submitted an application to the commission for a permit to conduct certain regulated activities on property located at 161 Marsh Hill Road in Orange. Specifically, Stew Leonard's sought approval of its plans to construct on the property a dairy store, an outdoor garden center, a restaurant, a conference center and related parking facilities, utilities and landscaping. The property consists of 41.15 acres, 18.6 acres of which will be covered by the proposed development, and 13.43 acres of which are regulated wetlands and buffer area. The plaintiffs intervened in the proceedings pursuant to General Statutes § 22a-19 (a),[4] alleging that the development of the property was reasonably likely to cause unreasonable pollution to the natural

[4] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect as long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

resources of the state, including its wetlands and water-courses. The commission granted Stew Leonard's application for a regulated activities permit subject to certain conditions.

Thereafter, the plaintiffs appealed from the commission's decision to the trial court pursuant to § 22a-43, claiming, inter alia, that the decision was not supported by substantial evidence. In a ruling from the bench, the trial court concluded that the decision was supported by substantial evidence. The court also noted, however, that five of the conditions imposed by the commission required Stew Leonard's to submit additional plans and information concerning certain portions of the proposed development.[5] The court ordered the defendants to provide the materials to the plaintiffs on remand. The court also indicated that the plaintiffs should be given an opportunity to respond to the materials, but that it would not order the commission to conduct a public hearing for that purpose. The trial court then rendered judgment denying the plaintiffs' appeal and sustaining the commission's decision.

Thereafter, the plaintiffs filed this appeal in the Appellate Court. Stew Leonard's filed a motion to dismiss the appeal on the ground that the plaintiffs lacked standing under §§ 22a-43 and 22a-19 to appeal from the commission's decision because they had not alleged unreasonable impairment of the environment. The Appellate Court denied the motion to dismiss without prejudice and ordered the parties to address the standing issue

---

[5] These conditions required Stew Leonard's to submit: (1) "[r]evised and updated erosion control plan that implements all [s]tate [r]egulations"; (2) "[a]dditional detailed information . . . required for the silt fence and hay bales"; (3) "[a] plan that addresses the placement of eco stone pavers and the winter sanding issues"; (4) "[a]ny and all conflicts with soil, pipes, inverts and any other problems as discussed are addressed as part of the [s]torm [d]rainage [p]lan"; and (5) "a phasing plan [designed by its engineer] to minimize large disturbed areas and design the project to be constructed as practical[ly] as possible without leaving large areas open for erosion."

in their appellate briefs.[6] Thereafter, we transferred the appeal to this court. See footnote 1 of this opinion.

The plaintiffs claim on appeal that the trial court improperly determined that the commission's decision granting the permit was supported by substantial evidence. The defendants claim, as alternate grounds for affirmance, that: (1) the trial court lacked subject matter jurisdiction because § 22a-19 does not provide a right to appeal from an agency's decision, but only to intervene in an appeal brought by a party who is classically or statutorily aggrieved by the agency's decision; and (2) even if a party who intervenes pursuant to § 22a-19 has a right to bring an appeal, the plaintiffs lack standing to appeal because they have not alleged that the proposed development will cause unreasonable impairment of the environment. The defendants also claim that the trial court improperly ordered additional post-judgment proceedings relating to the conditions of approval when it found that Stew Leonard's activities were not likely to result in unreasonable impairment of the environment.[7] Although the issue was not raised

[6] The Appellate Court ordered the parties to address the following question in their briefs: "Whether this court should conclude that the form of the trial court's judgment was improper, reverse the judgment and remand the matter to the trial court with direction to render judgment dismissing the underlying action for lack of subject matter jurisdiction due to the [plaintiffs'] lack of standing under the Environmental Protection Act of 1971, General Statutes [§] 22a-14 et seq. See *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 394 [880 A.2d 865] (2005)." Thus, the Appellate Court properly treated the defendants' motion to dismiss for lack of standing as a challenge to the *trial court's* subject matter jurisdiction, the lack of which would not deprive the Appellate Court of appellate jurisdiction. See *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996). As we discuss in parts II and III of this opinion, the defendants now raise their jurisdictional claims as alternate grounds for affirming the judgment of the trial court. Thus, they effectively have abandoned their motion to dismiss this appeal.

[7] The defendants raised this claim in a statement of "adverse rulings or decisions of the court which should be considered on appeal *in the event the appellant is awarded a new trial*" pursuant to Practice Book § 63-4 (a) (1) (B). (Emphasis added.) The order for postjudgment proceedings challenged by the defendants will have effect, however, only if the plaintiffs

by the parties, because the question implicates this court's subject matter jurisdiction; see *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 466, 940 A.2d 742 (2008); we must also consider whether, in light of the trial court's order remanding the matter to the commission for further proceedings, the court's decision constituted an appealable final judgment. We conclude that: (1) the trial court's decision denying the appeal is an appealable final judgment and the trial court improperly issued orders for postjudgment proceedings; (2) the plaintiffs, as intervenors pursuant to § 22a-19, were entitled to appeal from the commission's decision pursuant to § 22a-43; (3) the plaintiffs had standing to appeal from the commission's decision; and (4) the commission's decision was not supported by substantial evidence.

I

We first address the question of whether the trial court's decision denying the plaintiffs' appeal and ordering the defendants to provide the plaintiffs with documentary materials relating to certain conditions imposed by the commission is an appealable final judgment. Because this issue is closely intertwined with the defendants' claim that the trial court improperly issued orders for postjudgment proceedings, we consider both issues together. We conclude that the trial court's decision denying the plaintiffs' appeal was a final judgment and that the trial court improperly issued orders for postjudgment proceedings.

The following additional procedural history is relevant to our resolution of this issue. As we have indi-

do *not* prevail on their appeal. Thus, the claim more properly should have been raised in a separate appeal or a cross appeal. Nevertheless, because the plaintiffs had notice of the defendants' intention to raise this issue and will not be prejudiced by the defendants' failure to raise the issue in a separate appeal, we will consider the defendants' claim.

cated, in its oral ruling on the plaintiffs' appeal, the trial court concluded that there was "substantial evidence to support everything that the [commission] has allowed" in its decision granting Stew Leonard's permit application. The court also ordered Stew Leonard's, however, to provide additional information to the plaintiffs in connection with five of the conditions that the commission had imposed on the approval. In addition, the court ordered the defendants to allow the plaintiffs to respond to the new information. The court recognized that these orders "present[ed] the potential for coming back to court," and stated, "I don't know whether it would be a new matter for a new court or a continuation. My guess is it's a continuation of this matter for this court." The court then stated that it did not intend to create "a new second shot on the entire panoply of information. This is a response to [the information that] the commission said it thought it needed to see and review, which [the] plaintiffs weren't going to be able to see and review." At the end of the hearing, the trial court noted that it was not sure that the plaintiffs would require a transcript of the court's ruling "because it seems [that] . . . an appeal wouldn't well lie at this point because an Appellate Court might say to [the plaintiffs] . . . your salvation may still . . . [lie] ahead of you. You might have been able to do almost everything you wanted when the new information came in and you [were] permitted to respond to it." Nevertheless, the trial court issued a judgment file stating that "[t]he court denies the plaintiffs' appeal and sustains the decision of the [commission] granting a permit to conduct regulated activities . . . ."

After the plaintiffs filed their appeal in the Appellate Court, that court, sua sponte, ordered the trial court to articulate whether it had sustained or denied the plaintiffs' appeal, and to state with specificity the orders that it had rendered for postjudgment proceedings. The

trial court responded that it had "denied the appeal on those topics as to which the issues had been squarely joined. That is to say, there was adequate foundation in the record before the [commission] to require affirmance, but only upon such fully exposed topics as to which [the] plaintiffs were fairly heard. That, however, did not constitute all of the issues. Some topics were to receive apparent further review by the [commission] and this court held that, on remand to the [commission], upon receipt by the [commission] of certain material it demanded, [the] plaintiffs must be heard." The trial court also stated that, "[i]f the material demanded by the [commission's] conditions has not yet been fully received [by the commission] (along with [the] plaintiffs' responses), then the matter will probably not have fully ripened and this trial court *may* well be requested to perform further review." (Emphasis in original.)

We note that none of the parties contends that the trial court's ruling was not an appealable final judgment. Rather, the defendants contend that, because the ruling *was* a final judgment sustaining the commission's decision granting the permit, there was no proper basis for the court's order for postjudgment proceedings. The plaintiffs contend that the trial court *improperly* issued a final judgment sustaining the commission's decision granting the permit when the issues addressed by the conditions were central to the question of whether the wetlands permit should have been approved in the first instance.[8] We conclude that there is merit to both claims.

At the outset of our analysis, we set forth the legal principles governing our resolution of this issue. "Because the provisions of the Uniform Administrative

---

[8] We address this claim in part IV of this opinion.

Procedure Act[9] do not govern [an appeal pursuant to § 22a-43] . . . it is the scope of the remand order in this particular case that determines the finality of the trial court's judgment. . . . A judgment of remand is final if it so concludes the rights of the parties that further proceedings cannot affect them. . . . A judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Citations omitted; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129–30, 653 A.2d 798 (1995).

In *Kaufman*, the trial court sustained the plaintiff's appeal from the decision of the defendant, the zoning commission of the city of Danbury (commission), denying the plaintiff's application for zone change in connection with a proposal for an affordable housing project, "but ordered a remand to give the commission the opportunity to impose reasonable conditions and changes with respect thereto." Id., 128. After the commission appealed to this court, we, sua sponte, ordered the parties to brief the question of whether the trial court's ruling was a final judgment. In determining that it was not, "[w]e attach[ed] significance to the fact that the trial court's judgment did not order further evidentiary determinations on remand. Although the trial court's remand may have *allowed* the commission to hear additional evidence in order to determine whether to impose reasonable conditions on or to make reasonable changes in the application, the remand in no way *required* the commission to conduct such an inquiry.

"Even more important, the trial court's judgment required the commission to approve the plaintiff's appli-

---

[9] "For appeals governed by the Uniform Administrative Procedure Act, General Statutes § 4-183 (j) provides in relevant part: 'For purposes of this section, a remand is a final judgment.' " *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129 n.6, 653 A.2d 798 (1995).

cation. With respect to this central issue, the trial court's decision so concludes the rights of the parties that further proceedings cannot affect them. . . . After explicitly resolving *all* [of] the issues in favor of the plaintiff . . . the trial court remanded the case only for the limited purpose of allowing the commission to impose reasonable conditions on or make reasonable changes to the development, if it so chose. Because the proceedings on remand cannot deprive the plaintiff of the zone change that the trial court has ordered to be approved, the trial court has rendered a final judgment and this court has subject matter jurisdiction over the commission's appeal." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 130–31. Accordingly, we concluded that the trial court's decision was an appealable final judgment. Id., 131. "Therefore, under *Kaufman*, a trial court's remand to a zoning commission is an appealable final judgment if it (1) does not require further evidentiary determinations by the commission or (2) dictates the outcome of the post-remand proceedings before the commission with respect to the application at issue." *AvalonBay Communities, Inc.* v. *Zoning Commission*, 284 Conn. 124, 138, 931 A.2d 879 (2007).

Moreover, this court implicitly has recognized that the fact interested parties may review and respond to any additional information to be provided by an applicant pursuant to conditions on an agency approval does not deprive the courts of appellate jurisdiction. In *Gardiner* v. *Conservation Commission*, 222 Conn. 98, 102, 608 A.2d 672 (1992), the defendant conservation commission of the town of Waterford granted the application of the defendant Reynolds Metals Development Company (Reynolds) to conduct regulated activities on certain land subject to conditions requiring Reynolds to submit additional information about the proposed development. The plaintiff, an abutting landowner,

appealed to the trial court, which sustained the decision. On appeal to this court, the plaintiff clamed that certain conditions on the approval allowed Reynolds to submit ex parte information to the conservation commission, thereby depriving him of his constitutional right to due process. Id. We concluded that this claim was baseless because, when an application is approved subject to conditions, interested parties should have an opportunity to review any additional submissions so "that no room be given for suspicion or cavil and that every effort be made to avoid the creation of a situation which might tend to weaken . . . public confidence in the action of a zoning board." (Internal quotation marks omitted.) Id., 104. In addition, we noted that the plaintiff would have the right to inspect the materials under the Freedom of Information Act, now codified as General Statutes § 1-200 et seq. Id., 105. Thus, the plaintiff would be afforded the opportunity "to review [any additional submissions required by the conditions] and to inform the commission of any inadequacies that [may be discovered] or any additional concerns raised by the information received. If the commission should fail to take appropriate action, [the interested party] . . . would not be without recourse. For over one hundred years in this state, we have recognized the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise lawful activity." (Internal quotation marks omitted.) Id. There was no suggestion in *Gardiner* that the fact that there may be postapproval proceedings related to conditions on the approval means that the approval is not a final decision for purposes of appeal.[10]

[10] We recognize that *Gardiner* did not involve a decision by the trial court remanding the case for further proceedings related to conditions, but involved review of the agency decision itself. The principle that the possibility of future proceedings related to proper conditions on an approval does not affect the finality of the approval applies equally, however, to trial court decisions.

With these principles in mind, we turn to the question of whether the trial court's ruling in the present case was a final judgment. The judgment file issued by the trial court states unequivocally that "[t]he court denies the plaintiffs' appeal and sustains the decision of the [commission] granting a permit to conduct regulated activities . . . ." Thus, the court implicitly concluded that the record before it contained sufficient evidence to justify the commission's decision approving the permit subject to conditions and rendered judgment accordingly. The court did not order any further evidentiary hearings on that question. We conclude, therefore, that the judgment of the trial court sustaining the commission's conditional approval of the permit is an appealable final judgment under *Kaufman*.

As we have indicated, however, notwithstanding the fact that it rendered judgment in favor of the defendants, the trial court issued additional orders and retained jurisdiction over the appeal in order to protect the plaintiffs' rights (1) to review the additional materials to be submitted by Stew Leonard's pursuant to the conditions, and (2) to obtain recourse if the materials failed to satisfy their environmental concerns. In light of its unequivocal ruling denying the plaintiffs' appeal, we must conclude that the court had no authority to retain jurisdiction for this purpose. Assuming, as the trial court apparently did, that the conditions on the approval were proper, the plaintiffs' rights to participate in proceedings concerning the conditions would be adequately protected by the principles set forth in *Gardiner*, without any need for the trial court to retain jurisdiction over the appeal.[11] On the other hand, as we

---

[11] The trial court believed that the commission's conditional approval in the present case was distinguishable from the approval under review in *Gardiner* because the conditions in *Gardiner* required additional information from "people who were theoretically . . . without any axe to [grind]. That is that they were municipal employees. And that seemed to be different than [this case, where] it is obvious that we are not talking about town employees making further submission of plans and intentions to the commis-

discuss more fully in part IV of this opinion, if the trial court had concluded that the conditions improperly required Stew Leonard's to submit information that was necessary to determine whether the regulated activities permit should be approved in the first instance, the proper course would have been to sustain the plaintiffs' appeal. Although we conclude that the trial court's orders for postjudgment proceedings were improper, there is no need to vacate the orders because we conclude in part IV of this opinion that the plaintiffs' appeal must be sustained.

II

We next consider the defendants' claimed alternate ground for affirmance that the plaintiffs, as intervenors in the proceedings before the commission pursuant to § 22a-19, were not entitled to bring an appeal pursuant to § 22a-43. We disagree.

This court repeatedly has held that a person who intervenes in an administrative proceeding pursuant to § 22a-19, and who is aggrieved by the agency's decision, is entitled to appeal from that decision pursuant to

sion." The trial court also noted that the plaintiffs in *Gardiner* were abutting landowners, while the plaintiffs in the present case were intervenors pursuant to § 22a-19, and the court was not certain whether, as intervenors, they would have the right to seek an injunction if they believed that the information submitted by Stew Leonard's did not satisfy their environmental concerns.

Contrary to the trial court's conclusion, however, the conditions on the approval under review in *Gardiner* did not require *neutral parties* to submit the additional information. Rather, the materials were to be submitted by Reynolds. *Gardiner* v. *Conservation Commission*, supra, 222 Conn. 102. In addition, we conclude that our statement in *Gardiner* that the plaintiff would not lack recourse if the information submitted by the applicant failed to address his concerns applies equally to persons who, although they lack standing to raise a nuisance claim, would have standing to raise a claim under General Statutes § 22a-16, which provides that any person may bring an action "for declaratory and equitable relief against . . . any person . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

the statutory provisions governing appeals from the decisions of that particular agency. See *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, 251 Conn. 269, 276 n.9, 740 A.2d 847 (1999); *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 715, 563 A.2d 1339 (1989); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 488–91, 400 A.2d 726 (1978). Although the defendants acknowledge that *Branhaven Plaza, LLC*, stands for this proposition, they contend that we should overrule that case because it is not supported by *Red Hill Coalition, Inc.*, and *Mystic Marinelife Aquarium, Inc.*[12] We conclude that, to the

---

[12] In support of this claim, the defendants rely primarily on the following language from our original decision in *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, Connecticut Law Journal, Vol. 65, No. 17, p. 25 (October 21, 2003), which was subsequently deleted: "We agree with the other courts in this state that have concluded that [§] 22a-19 does not create an independent right of appeal, but only allows intervention in an appeal otherwise allowed by statute. . . . *Dietzel* v. *Planning Commission*, 60 Conn. App. 153, 160, 758 A.2d 906 (2000); see *Rubin* v. *Conservation Commission*, Superior Court, judicial district of Waterbury, Docket No. CV97-0137827S (June 21, 1999) (24 Conn. L. Rptr. 681); *Roth* v. *Zoning Board of Appeals*, Superior Court, judicial district of Litchfield, Docket No. CV97-0073986 (February 3, 1998) (21 Conn. L. Rptr. 281); *Hyllen-Davey* v. *Plan & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV98-0579967 (July 10, 1998) [22 Conn. L. Rptr. 410]; *Taftville Reservoir Preservation Group* v. *Commission on City Planning*, Superior Court, judicial district of Norwich, Docket No. 108604 (March 13, 1997) (19 Conn. L. Rptr. 69). Moreover, we conclude that because § 22a-19 does not authorize an environmental intervenor to bring an appeal from proceedings that can be appealed by other parties, it certainly cannot be construed to provide a right of appeal from administrative proceedings that otherwise cannot be appealed." (Internal quotation marks omitted.)

Because this language ultimately was deleted from our decision; see *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 832 A.2d 611 (2003); we conclude that it has no persuasive value. As the original version of our decision in *Fort Trumbull Conservancy, LLC*, suggested, however, a number of trial courts have concluded that *Red Hill Coalition, Inc.*, and *Mystic Marinelife Aquarium, Inc.*, do not stand for the proposition that intervenors pursuant to § 22a-19 are entitled to appeal from an agency decision. See also M. St. Amand, "Independent Right of Appeal Under CEPA § 22a-19? I Haven't the Foggiest Idea!" 78 Conn. B.J. 1, 14–30 (2004) (arguing that *Branhaven Plaza, LLC*, is not supported by *Red Hill Coalition, Inc.*).

contrary, our decisions in *Red Hill Coalition, Inc.*, and *Mystic Marinelife Aquarium, Inc.*, squarely support *Branhaven Plaza, LLC*. Because our decisions in those cases have been an ongoing source of confusion in the trial courts; see footnote 12 of this opinion; it is appropriate to explain in some detail why all three cases are consistent.

In *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 484–85, the defendant George P. Korteweg had submitted to the defendant commissioner of environmental protection (commissioner) an application for a regulated activities permit to erect certain structures in the Mystic River. The plaintiff Mystic Seaport, Inc. (Mystic Seaport), owned property adjacent to Korteweg's property; id., 486; and intervened in the permit proceedings pursuant to § 22a-19. Id., 489. After the commissioner granted Korteweg's application, Mystic Seaport and a number of individuals who owned property near the proposed project but who had not intervened in the proceedings before the commissioner pursuant to § 22a-19; id., 486–88; appealed to the trial court pursuant to General Statutes (Rev. to 1977) § 25-17.[13] Id., 484. The commissioner then filed a motion to dismiss Mystic Seaport's appeal on the ground that the Connecticut Environmental Protection Act of 1971, General Statutes § 22a-14 et seq., "does not contain any legislative pronouncement that a person can bring an appeal in the first instance, that nowhere does [the statute] declare any person or class of persons 'legislatively aggrieved,' and that there is no legislative statement which allows anyone who intervenes in an

[13] General Statutes (Rev. to 1977) § 25-17 provides: "Any person, firm or corporation, whether public or private, aggrieved by any order, authorization or decision of the commissioner other than an order under section 22a-6b may appeal therefrom to the superior court for Hartford county within fifteen days after the issuance of such order, authorization or decision. Such appeal shall have precedence in the order of trial in accordance with the provisions of section 52-192."

administrative hearing to bring an appeal sua sponte to a court seeking review of an administrative action." Id., 489. The trial court held that Mystic Seaport "did have standing as a 'legislatively aggrieved' person to maintain its appeal for the limited purpose of raising environmental issues. Although the language of the [Connecticut Environmental Protection Act] is in terms of intervention into an existing judicial review of an agency action or the initiation of an independent declaratory judgment or injunctive action, the Superior Court, while recognizing this, noted that Mystic Seaport would not have any existing appeal in which to intervene. This, according to the Superior Court, would thwart the purpose of the [Connecticut Environmental Protection Act] which is remedial in nature and, as such, should be liberally construed. One basic purpose of the [Connecticut Environmental Protection Act] is to give persons standing to bring actions to protect the environment." Id.

The defendants in *Mystic Marinelife Aquarium, Inc.*, also asked the trial court to dismiss the plaintiffs' claims on the ground that none of the plaintiffs was aggrieved by the commissioner's decision under § 25-17. The trial court granted that motion with respect to the plaintiffs who had not intervened pursuant to § 22a-19. Id., 491. With respect to Mystic Seaport's appeal, the court concluded that, although Mystic Seaport owned land abutting the proposed project, it lacked statutory standing because it had not alleged that the project would affect the value or use of its property. Id., 497–98. The trial court further concluded that, although Mystic Seaport's status as an intervenor pursuant to § 22a-19 conferred standing on it to bring an appeal pursuant to § 25-17 to raise environmental issues; id., 499; it had failed to establish on the merits that Korteweg's activities would cause unreasonable pollution. Id., 500. Accordingly, the trial court dismissed the plaintiffs' appeal. Id., 484–85.

The plaintiffs then appealed to this court. Id., 486. The commissioner claimed, as an alternate ground for affirming the judgment of the trial court with respect to Mystic Seaport, that, contrary to the trial court's conclusion, the Connecticut Environmental Protection Act did not authorize "anyone who intervenes in an administrative hearing to bring an appeal sua sponte to a court seeking review of an administrative action." Id., 489. We concluded that, "because Mystic Seaport became a party under § 22a-19 (a) in filing a verified pleading, which set the parameters of the issues it could raise on this appeal, there is no question that Mystic Seaport can appeal. That appeal, however, is limited to raising environmental issues only, as the Superior Court properly held." Id., 490. We then concluded that the trial court properly had determined that Mystic Seaport had failed to establish unreasonable harm to the environment; id., 502; and that the other plaintiffs lacked standing to appeal. Id., 497. Accordingly, we affirmed the judgment of the trial court. Id., 503.

In *Red Hill Coalition, Inc.* v. *Conservation Commission,* supra, 212 Conn. 713–14, the defendant Red Hill Development Corporation (development corporation) submitted to the defendant conservation commission an application for a permit to conduct certain wetlands activities on its property in connection with the construction of a road. The plaintiff Red Hill Coalition, Inc. (coalition), intervened in the permit proceedings pursuant to § 22a-19. Id., 713. After the conservation commission had granted the permit, the coalition, joined by the plaintiff Thomas Fitzgerald, a member of the coalition and a landowner whose property abutted the development corporation's land, and the plaintiff Julianne Steffens, the president of the coalition, appealed from the decision to the trial court. Id., 711–12. The trial court concluded that, as an intervenor pursuant to § 22a-19, the coalition had standing to appeal

from the decision and that Steffens and Fitzgerald were entitled under § 22a-19 to join in the appeal without having intervened in the proceedings before the conservation commission. Id., 714–16. The trial court also concluded that Fitzgerald was " 'traditionally' aggrieved" because the decision adversely affected his property rights. Id., 716. The trial court sustained the commission's decision on the merits. Id., 712.

The plaintiffs then appealed. Id., 711. The conservation commission claimed, as an alternate ground for affirming the trial court's judgment with respect to the coalition, that the coalition did not have standing to bring an appeal merely because it was an intervenor pursuant to § 22a-19. Id., 714. We concluded that, under our decision in *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 490, the coalition had standing to appeal from the conservation commission's decision for the limited purpose of raising environmental issues, and that Fitzgerald and Steffens were entitled to join the appeal even though they had not intervened in the proceedings before the conservation commission. *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 715. We further concluded that Fitzgerald had standing to appeal independent of § 22a-19 because he was " 'traditionally' aggrieved" as an abutting landowner. Id., 716; id., 716–17 ("we cannot say that the trial court erred when it found that Fitzgerald had, *in addition to standing under § 22a-19,* 'the more traditional aggrievement standing of having a specific, personal and legal interest in the subject matter of the [commission's] decision' " [emphasis added]). We then affirmed the judgment of the trial court on the merits. Id., 726.

In *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 251 Conn. 273, the plaintiffs intervened in a proceeding before the defendant inland wetlands commission of the town of Branford on an application

for a permit to conduct regulated activities. After the commission had approved the application with conditions, the plaintiffs appealed to the trial court pursuant to § 22a-43, claiming aggrievement under § 22a-19. The trial court dismissed the appeal and the plaintiffs appealed to the Appellate Court. Id., 275–76. After the appeal was transferred to this court, the defendant applicant filed a motion to dismiss the appeal claiming that the plaintiffs lacked standing to appeal in their capacity as intervenors.[14] Id., 276. We denied the motion to dismiss, stating that "[§] 22a-19 (a) allows any person to intervene so that private citizens are provided a voice in ensuring that the natural resources of the state remain protected. Because the plaintiffs filed a notice of intervention at the commission hearings in accordance with § 22a-19 (a), they had standing to appeal the environmental issues associated with that commission's decision. See *Red Hill Coalition, Inc.* v. *Conservation Commission*, [supra, 212 Conn. 715]." *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 276 n.9.

A number of trial courts have concluded that our decisions in *Mystic Marinelife Aquarium, Inc.*, and *Red Hill Coalition, Inc.*, do not stand for the general proposition that a person who intervenes in agency proceedings pursuant to § 22a-19 has standing to appeal from the agency's decision. See footnote 12 of this opinion. *West Norwalk Assn.* v. *Conservation Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV98-0165846S (June 17, 1999), is representative of these decisions. In that case, the trial court

[11] The defendant applicant in *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 251 Conn. 276, filed a motion to dismiss the plaintiffs' appeal from the judgment of the trial court on the ground that the plaintiffs' lacked standing to appeal to the trial court. The trial court's lack of subject matter jurisdiction does not, however, deprive this court of appellate jurisdiction. See *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996). Thus, the issue more properly should have been raised as an alternate ground for affirmance.

concluded that, because one of the plaintiffs in *Red Hill Coalition, Inc.*, had been classically aggrieved, the case does "not stand for the proposition that all environmental interven[o]rs in zoning cases at the hearing level are automatically and statutorily aggrieved at the court appeal level . . . ." Id. Rather, the court suggested, that case merely stands for the proposition that, when a person who has classical standing appeals from an agency decision, nonaggrieved parties may join in the appeal pursuant to § 22a-19.[15] Id. The sole basis for our conclusion in *Red Hill Coalition, Inc.*, that the coalition had standing to appeal from the conservation commission's decision, however, was our determination that intervenors pursuant to § 22a-19 have standing to bring an appeal. Accordingly, we reject this reading of *Red Hill Coalition, Inc.*

The trial court in *West Norwalk Assn.* v. *Conservation Commission*, supra, Superior Court, Docket No. CV98-0165846S, also concluded that our decision in *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 483, was not binding precedent because "[n]o cross appeal was taken by the defendants on the trial court's finding of intervening aggrievement.

"The issue of whether . . . § 22a-19 provided automatic legislative aggrievement was not addressed at the appellate level. [*Mystic Marinelife Aquarium, Inc.*] is,

---

[15] The trial court in *West Norwalk Assn.* v. *Conservation Commission*, supra, Superior Court, Docket No. CV98-0165846S, also suggested, somewhat inconsistently, that, because we concluded that Fitzgerald was classically aggrieved and the coalition would have had standing to join Fitzgerald's appeal, our holding in *Red Hill Coalition, Inc.*, that the coalition had standing to appeal because of its status as an intervenor pursuant to § 22a-19, was mere dicta. We disagree. The question of the coalition's standing to appeal as an intervenor under § 22a-19 was squarely before us and our resolution of that question in favor of the coalition provided the sole basis for our conclusion that the coalition and Steffens had standing to appeal from the conservation commission's decision. See *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 715–16.

in effect, a trial court decision . . . ." The defendants in *Mystic Marinelife Aquarium, Inc.*, had no standing to bring a cross appeal from the judgment of the trial court, however, because they were not aggrieved by it. Instead, as we previously have indicated, the defendants properly raised their claim that intervenors pursuant to § 22a-19 are not entitled to appeal from agency decisions as an alternate ground for affirming the judgment of the trial court.[16] *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 489. Thus, the issue was squarely before this court and our holding is binding precedent.

A number of trial courts also have relied on the principle that " '[§] 22a-19 is not a statute creating an independent right of appeal, but merely allows participation in an appeal taken and authorized by another statute,' " in concluding that an intervenor pursuant to § 22a-19 has no right to appeal from an agency's decision, but has only a right to join an appeal brought by another party. *Rubin* v. *Conservation Commission*, Superior Court, judicial district of Waterbury, Docket No. CV97-0137827S (June 21, 1999) (24 Conn. L. Rptr. 681, 682), quoting R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1998 Pocket Part) § 36.2, p. 92; *Rubin* v. *Conservation Commission*, supra, 682 (citing cases). The quoted language merely indicates, however, that, although § 22a-19 itself does not provide any mechanism for an appeal, a person who intervenes in an administrative proceeding pursuant to § 22a-19 may pursue any appeal procedures authorized by the statutes governing that proceeding. It is only when the governing statutes do not authorize an appeal that an intervenor pursuant to § 22a-19 has no right to appeal. See *Fort Trumbull Conservancy, LLC* v. *Planning &*

---

[16] Although our decision in *Mystic Marinelife Aquarium, Inc.*, does not expressly identify the defendants' claim as an alternate ground for affirmance, it clearly was one.

*Zoning Commission*, 266 Conn. 338, 361–64, 832 A.2d 611 (2003).

Accordingly, we reject the defendants' invitation in the present case to overrule our holding in *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 251 Conn. 276 n.9, that a person who intervenes in agency proceedings pursuant to § 22a-19 may bring an appeal from the agency's decision pursuant to any statutory appeal procedures authorized by the statutes governing the proceeding. We conclude, therefore, that the plaintiffs in the present case, as intervenors in the proceedings before the commission pursuant to § 22a-19, were entitled to appeal to the trial court from the commission's decision pursuant to § 22a-43.

III

We next address the defendants' claimed alternate ground for affirmance that the plaintiffs did not have standing to raise their claim under § 22a-43 because they have not alleged that Stew Leonard's activities will result in unreasonable impairment or destruction of wetlands and watercourses. We disagree.

An intervenor pursuant to § 22a-19 has standing to bring an appeal from an agency's decision "only to protect the natural resources of the state from pollution or destruction." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 499. In addition, "§ 22a-19 grants standing to intervenors to raise only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding into which the party seeks to intervene." *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 148, 788 A.2d 1158 (2002). Thus, an intervenor pursuant to § 22a-19 has standing to appeal from the decision of an inland wetlands commission pursuant to § 22a-43 only for the purpose of raising claims that are within the zone of interests that are protected under the Inland Wetlands

and Watercourses Act, i.e., claims alleging the pollution, impairment or destruction of the state's inland wetlands and watercourses. See General Statutes § 22a-36 et seq.

"Although a plaintiff seeking to assert a claim under § [22a-19] need not prove his case in order to survive a motion to dismiss, he nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 289–90, 933 A.2d 256 (2007). "A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § [22a-19], but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id., 290.

The defendants in the present case claim that the plaintiffs' complaint to the trial court "does not . . . allege any specific identifiable pollution or impairment of the wetlands or watercourses which is reasonably likely to occur as a result of the proposed activity, or the basis upon which [the] plaintiffs claim that such likely to occur pollution is unreasonable." We disagree. Paragraph 19 (h) of the plaintiffs' complaint alleges that, "[g]iven the amount of impervious cover being introduced onto [Stew Leonard's] property, the application failed to satisfactorily account for removal of dissolved solids, inorganic and organic nitrogen, salt, trash, pathogenic bacteria and various aromatic hydrocarbons, and the deleterious effects of such pollution on wetlands and watercourses." In addition, paragraph 19 (j) alleged that "[t]he application did not contain adequate information about the vernal pool or other wetland features to support assertions of lack of wetland impact given the scale and intensity of development and the anticipated vehicular traffic associated therewith."

Wetlands, watercourses and vernal pools[17] are within the zone of interests protected by the Inland Wetlands and Watercourses Act, and the plaintiffs alleged that the regulated activities allowed by the permit granted to Stew Leonard's by the commission would have a specific "deleterious effect" and "impact" on these environmental resources. We conclude, therefore, that these allegations are sufficient to withstand a motion to dismiss for lack of standing.

IV

We next consider the plaintiffs' claim that the trial court improperly determined that the commission's decision granting Stew Leonard's application for a regulated activities permit was supported by substantial evidence. We agree.

The plaintiffs claim that, because the information to be submitted by Stew Leonard's pursuant to the conditions on the approval of the permit was necessary for a determination as to whether the proposed development complied with § 381-43 of the Orange inland wetlands and watercourses regulations,[18] the commission's

---

[17] General Statutes § 22a-38 (16) defines " '[w]atercourses' " in relevant part as "rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bodies of water, natural or artificial, vernal or intermittent, public or private, which are contained within, flow through or border upon this state or any portion thereof . . . ."

[18] Section 381-43 of the Orange inland wetlands and watercourses regulations provides in relevant part: "In carrying out the purposes and policies of [the Inland Wetlands and Watercourses Act], and pursuant to [General Statutes § 22a-41 (d)] . . . the [c]ommission shall consider all relevant facts and circumstances in making its decision on any application for a permit, including but not limited to the following:

"A. The environmental impact of the proposed regulated activity on wetlands or [watercourses].

"B. The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or [watercourses].

"C. The relationship between the short-termed and long-term impacts of the proposed regulated activity on wetlands or [watercourses] and the maintenance and enhancement of long-term productivity of such wetlands or [watercourses].

decision could not have been premised on a determination, supported by substantial evidence, that the proposal was in compliance with the regulations. Specifically, the plaintiffs contend that the conditions requiring Stew Leonard's to submit a revised and updated erosion control plan that implements all state regulations and additional detailed information for the silt fence and hay bales "indicate that the . . . soil erosion and sediment control plan [that had been submitted] at the time of the decision did *not* implement all state regulations and was insufficient as to detail." (Emphasis in original.) Similarly, the plaintiffs contend that the conditions requiring Stew Leonard's to design a phasing plan to minimize large disturbed areas subject to erosion and to submit additional information concerning paving stones, winter sanding and the drainage plan, show that Stew Leonard's had not submitted information critical to a determination of whether the proposed development complied with the regulations when the commission approved the permit.

We begin with the standard of review. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than

"D. Irreversible and irretrievable loss of wetland or [watercourse] resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to:

"(1) Prevent or minimize pollution or other environmental damage;

"(2) Maintain or enhance existing environmental quality; or

"(3) In the following order or priority: restore, enhance and create productive wetland or [watercourse] resources.

"E. The character and degree of injury to, or interference with, safety, health, or the reasonable use of property which is caused or threatened by the proposed regulated activity.

"F. Impacts of the proposed regulated activity on wetlands or [watercourses] outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or [watercourses]."

simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . .

"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587–88, 628 A.2d 1286 (1993).

"In adhering to this substantial evidence standard for an inland wetlands agency appeal, we have held that [notwithstanding the provisions of General Statutes § 22a-42a (d) (1)][19] it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that commission to determine if there is an adequate basis for its decision." (Internal quotation marks omitted.) Id., 588–89. "As long as a

---

[19] General Statutes § 22a-42a (d) (1) provides in relevant part: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set forth in section 22a-41, and such agency, or its agent, shall state upon the record the reason for its decision. . . ."

search of the record reveals the basis for the agency's decision consistent with the substantial evidence standard . . . then the reviewing court must infer that the local wetlands [agency's decision should be sustained]. . . . Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. . . . This cautionary advice is especially apt whenever the court is reviewing a decision of a local commission composed of laypersons." (Citations omitted; internal quotation marks omitted.) Id., 595–96.

In the present case, the commission did not state on the record the reasons for its decision approving Stew Leonard's application for a regulated activities permit. At the time of the vote, however, the chairman of the commission "reminded the [c]ommission that a vote in favor of the application would necessarily constitute a finding that the [plaintiffs] had not carried their burden of proving [that] the application would [cause] unreasonable damage to the wetlands." Because the commission did not state the reasons for its decision, the trial court searched the record for an adequate basis for the decision. The court concluded that the record supported the commission's determination that the plaintiffs had failed to prove that any of the activities that were allowed by the permit were likely to cause unreasonable harm to the environment.

On appeal to this court, the plaintiffs do not challenge this conclusion by the trial court. Rather, they claim that the commission's decision cannot be sustained because the commission did not make a determination, supported by substantial evidence, that the proposed development complied with applicable regulations and would *not* cause environmental harm. We are required to determine, therefore, whether, as the trial court concluded, the plaintiffs had the burden of proving that the proposed development was likely to cause harm to

the environment or, instead, as the plaintiffs claim, they had the burden of proving that the commission's decision was not based on a determination, supported by substantial evidence, that the proposed development complied with the regulations and would *not* cause such harm.

This court has recognized that the applicant has "the burden of proving compliance with the statutory requirements for a wetlands permit." *Strong* v. *Conservation Commission*, 226 Conn. 227, 229, 627 A.2d 431 (1993); see also *Samperi* v. *Inlands Wetlands Agency*, supra, 226 Conn. 593. "The evidentiary burden imposed on the applicant to demonstrate that its proposal [meets the regulatory requirements] will ordinarily require an affirmative presentation to that effect." *Samperi* v. *Inlands Wetlands Agency*, supra, 593. This court also has held that a claim that an application for a regulated activities permit does not comply with substantive wetlands regulations is cognizable under the Connecticut Environmental Protection Act. See *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 293. It is clear, therefore, that if the wetlands agency has not made a determination, supported by substantial evidence, that the applicant's proposal complied with applicable statutes and regulations, a decision approving the permit cannot be sustained on appeal, regardless of whether the plaintiff has affirmatively established that the proposal will cause harm to the wetlands. We conclude, therefore, that an intervenor pursuant to § 22a-19 can prevail on appeal not only by proving that the proposed development likely would cause harm to the wetlands, but also by proving that the commission's decision was not based on a determination, supported by substantial evidence, that the development complied with governing statutes and regulations and would not cause such harm.

We also conclude that the plaintiffs in the present case have met their burden of proof. It is implicit in the condition of approval requiring Stew Leonard's to submit a "[r]evised and updated erosion control plan that implements all [s]tate [r]egulations" that the commission had not determined that the existing erosion control plan met state regulations when it rendered its decision. Moreover, we agree with the plaintiffs, and the defendants do not dispute, that proper erosion control on a development of 18.6 acres on a 41.15 acre site, 13.43 acres of which are regulated wetlands, is critical to the environmental interests that the Inland Wetlands and Watercourses Act was intended to protect. See *Ventres* v. *Inland Wetlands & Watercourses Commission*, 25 Conn. App. 572, 574, 595 A.2d 914 (inadequate plan for erosion and sediment control is valid reason for denying wetlands permit), cert. denied, 220 Conn. 921, 597 A.2d 344 (1991). Although the courts are authorized to search the record of the hearings before the commission to determine if there is an adequate basis for its determination that a plan complies with governing law, the courts are not authorized, or competent, to make that determination in the first instance.[20] Cf. *Toll Bros., Inc.* v. *Inland Wetlands Commission*, 101 Conn. App. 597, 602, 922 A.2d 268 (2007) (when court determines that wetlands agency's decision denying permit is not supported by substantial evidence, direct order to agency to approve permit is unwarranted and case must be remanded to agency for further consideration). We conclude, therefore, that the plaintiffs have met their burden of proving that the commission's decision was not premised on a determination, supported by substantial evidence, that the proposed development

[20] We recognize that, ordinarily, a determination that a proposal complied with applicable statutes and regulations would be implicit in an agency approval. As we have indicated, however, the record in the present case compels a conclusion that the commission made no such determination.

complied with applicable statutes and regulations and would not cause harm to the wetlands.[21]

The defendants point out that this court and the Appellate Court previously have held that conditional approvals of wetland permit applications are permissible. See *Gardiner* v. *Conservation Commission*, supra, 222 Conn. 102 (permit application approved subject to conditions requiring applicant, inter alia, to submit additional information regarding detention basins); *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 714 (permit application approved subject to condition that applicant provide reasonable compensation for wetland development); *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 558–61, 552 A.2d 796 (1989) (permit application approved subject to condition that applicant post performance bond), overruled on other grounds by *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 582, 715 A.2d 46 (1998); *Keiser* v. *Conservation Commission*, 41 Conn. App. 39, 41, 674 A.2d 439 (1996) (permit application approved subject to condition that environmental consultant oversee installation of sediment and erosion control measures). In each of these cases, however, the conditions required the applicant to take *specific actions* that would bring the proposed conduct into compliance with applicable law. The cases do not stand for the proposition that a wetlands agency may impose conditions on an approval the effect of which is to leave open the question of whether the regulated activities permit should be approved in the first instance.[22]

---

[21] Because we conclude that the condition relating to the erosion control plan substantiates the plaintiffs' claim that the commission did not make a determination, supported by substantial evidence, that the proposed development met applicable wetlands regulations and statutes, we need not consider the other conditions imposed on the approval.

[22] We recognize that, in *Gardiner*, the plaintiff claimed that the "conditions imposed by the commission allow the ex parte submission of engineering data by [the applicant] relevant to whether the permit should have been

Having concluded that the record does not establish that the commission's decision was based on a determination, supported by substantial evidence, that the proposed development complied with the governing wetlands statutes and regulations, we conclude that the trial court improperly denied the plaintiffs' appeal.[23]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion ZARELLA and LEHENY, Js., concurred.

NORCOTT, J., with whom AURIGEMMA, J., joins, concurring. I agree with the majority's resolution of the issues presented by this appeal, but wish to elaborate on part IV of the majority opinion, which concludes that the decision of the named defendant, the inland wetlands commission of the town of Orange (commission), to approve the application of the defendant Stew Leonard's Orange, LLC (Stew Leonard's), was not supported by substantial evidence. I write separately to: (1) emphasize that inland wetlands agencies have the authority under General Statutes § 22a-42a (d) (1)[1] to

granted and that he will have no opportunity to challenge the information." *Gardiner* v. *Conservation Commission*, supra, 222 Conn. 102. In his dissenting opinion, Justice Berdon argued that the conditions were central to the question of "whether the regulated activity should be permitted in the first instance." Id., 115. In rejecting the plaintiff's claim, we implicitly rejected that argument.

[23] We note that, "upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion [this court] should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the [commission] would be an impermissible judicial usurpation of the administrative functions of the [commission]." *Bogue* v. *Zoning Board of Appeals*, 165 Conn. 749, 753–54, 345 A.2d 9 (1974).

[1] General Statutes § 22a-42a (d) (1) provides: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set forth in section 22a-41, and such agency, or its agent, shall state upon the record the reason for its decision.

impose conditions on the approval of permits to conduct regulated activities, and that such conditions may well be necessary to direct compliance with the applicable environmental standards, without incurring the financial or temporal costs attendant to the denial of an application; and (2) ensure that our conclusion, directing the trial court to sustain the appeal filed by the plaintiff intervenors,[2] is informed by an independent review of the record, instead of just on an assumption, however well-founded, about whether the plan as conditionally approved complies with the relevant regulatory scheme. A review of the record leads me to determine

*In granting a permit the inland wetlands agency, or its agent, may grant the application as filed or grant it upon other terms, conditions, limitations or modifications of the regulated activity which are designed to carry out the policy of sections 22a-36 to 22a-45, inclusive.* Such terms may include any reasonable measures which would mitigate the impacts of the regulated activity and which would (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources. No person shall conduct any regulated activity within an inland wetland or watercourse which requires zoning or subdivision approval without first having obtained a valid certificate of zoning or subdivision approval, special permit, special exception or variance or other documentation establishing that the proposal complies with the zoning or subdivision requirements adopted by the municipality pursuant to chapters 124 to 126, inclusive, or any special act. The agency may suspend or revoke a permit if it finds after giving notice to the permittee of the facts or conduct which warrant the intended action and after a hearing at which the permittee is given an opportunity to show compliance with the requirements for retention of the permit, that the applicant has not complied with the conditions or limitations set forth in the permit or has exceeded the scope of the work as set forth in the application. The applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision and the agency shall cause notice of their order in issuance, denial, revocation or suspension of a permit to be published in a newspaper having a general circulation in the town wherein the wetland or watercourse lies. In any case in which such notice is not published within such fifteen-day period, the applicant may provide for the publication of such notice within ten days thereafter." (Emphasis added.)

[2] The plaintiffs are George L. Finley, Barbara K. Schmidt and Vincent P. Schmidt, who intervened in these proceedings pursuant to General Statutes § 22a-19 (a).

that Stew Leonard's application either lacked an erosion and sedimentation control plan (erosion control plan), or included one whose failure to comply with the relevant regulatory scheme could not be addressed by reasonably specific conditions of approval. Accordingly, I agree with the majority's conclusion that the commission's decision was not supported by substantial evidence.

I begin by noting my general agreement with the majority's statement of the relevant facts and procedural history. I do, however, find it necessary to develop further the factual background behind the erosion control plan condition that forms the basis for the majority's decision in this case, which demonstrates that Stew Leonard's application, filed in July, 2004, included two alternative stormwater management schemes, one that utilizes the pond on the site for runoff discharge (pond plan), and the other that does not (no pond plan). The pond plan included an erosion control plan that had been prepared in accordance with the 2002 version of the Connecticut Erosion and Sedimentation Guidelines (guidelines),[3] but the subsequently filed no pond plan

[3] General Statutes § 22a-328, which is part of the Soil Erosion and Sediment Control Act, requires the Council on Soil and Water Conservation (council); see General Statutes § 22a-315 (c); to "develop guidelines for soil erosion and sediment control on land being developed. The guidelines shall outline methods and techniques for minimizing erosion and sedimentation based on the best currently available technology. Such guidelines shall include, but not be limited to, model regulations that may be used by municipalities to comply with the provisions of sections 22a-325 to 22a-329, inclusive. The Commissioner of Environmental Protection and the soil and water conservation districts shall make the guidelines available to the public."

The council describes the guidelines as "a useful reference for projects that require erosion and sediment control planning, design and implementation," and states that they "may be designated as a primary guiding document, or as the foundation and minimum requirements for development of best management practices for construction activities for a number of programs beyond the original intent of the legislation that required the creation of this document," including inland wetlands and watercourses. 2002 Connecticut Guidelines for Soil Erosion and Sediment Control, p. 1-1. Although intended to be authoritative statements of the best possible implementations of the applicable laws, the guidelines state that they do not themselves have the

was submitted without an erosion control plan. During the proceedings, the town's inland wetlands officer requested assistance from the Southwest Conservation District (district),[4] which reviewed the application, and noted, inter alia, that the proximity of the project to the wetlands and the extensive cuts and fill required "warrants the use of enhanced erosion and sedimentation controls," because of a "moderate" to "severe erosion hazard" due to the types of soil present. The district indicated further that the erosion control plan submitted by Stew Leonard's still had to be revised in accordance with the guidelines. Subsequently, James Rotondo, Stew Leonard's engineer, responded to those concerns by indicating his intent to obtain permits from the state department of environmental protection, consider the addition of more sediment basins and stabilize soil stockpiles stored for more than thirty days with vegetative cover.[5] In response to questions from Commissioner Lou Gherlone, Rotondo further assured the

force of law, as "the use of the [g]uidelines does not relieve the user of the responsibility of complying with laws and regulations that cite the [g]uidelines." Id., p. 1-4.

[4] The district is a nonprofit conservation agency that works "with other public and private agencies, as specified under [No. 74-325 of the 1974 Public Acts], for the protection of land and water resources to improve the quality of life for all in the Fairfield and New Haven County area." Southwest Conservation District, "About the Southwest Conservation District," at http://www.conservect.org/southwest/aboutus.shtml (last visited September 30, 2008). The district works in cooperation with federal, state and local environmental protection agencies to "identify and remedy soil erosion, sediment control and water conservation concerns . . . ." Id. Part of this assistance includes the provision of technical services to municipalities, including reports funded by the state department of environmental protection, site visits and site plan reviews, to assess concerns with soil erosion and sediment control, as well as water quality, wetland and stormwater issues. See Conservation Districts of Connecticut, "Assistance to Municipal Land Use Commissions and Staff," at http://www.conservect.org/assistance_to_municipal_land_use_commissions.shtml (last visited September 30, 2008). The plaintiffs in this appeal encouraged the participation and endorsed the report of the district.

[5] In August, 2004, Stew Leonard's engineers filed a best management practices plan that also proposed to use vegetation for permanent erosion control.

commission that the plan would be modified to indicate that the silt fences, as well as erosion control hay bales, were in place and satisfied state specifications. After further discussion, John Fallon, counsel for Stew Leonard's, emphasized that it anticipated and welcomed the addition of these more detailed erosion and sediment control plans as conditions of approval that would need to be satisfied, in the discretion of the town's inland wetlands officer, prior to the issuance of a permit.

As the proceedings continued into November, 2004, erosion controls remained a concern, as expressed by Robert Sonnichsen, the engineer with Delta Environmental Services (Delta), who had been retained by the commission to perform an independent review of the application. Indeed, Commissioner Diana Ross pointed out that no erosion control plan had been filed for the no pond plan. Indeed, in further discussion of that alternative, Ross noted that the silt fences would be located differently under the no pond plan, which would require the submission of a new erosion control plan. In response, Rotondo again assured the commission that the proper erosion control plan would be developed for the no pond plan. Fallon then again emphasized the availability of a conditional approval and oversight by the town's enforcement officer, particularly given the impending statutory deadline for action on the application. See General Statutes § 22a-42a (c) (1) (inland wetlands hearings "shall be held in accordance with the provisions of subsection [c] of [General Statutes §] 8-7d"); see also General Statutes § 8-7d (a) ("All decisions on such matters shall be rendered within sixty-five days after completion of such hearing, unless a shorter period of time is required under this chapter, chapter 126 or chapter 440. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of all such periods shall not be for longer than sixty-five

days, or may withdraw such petition, application, request or appeal.").

Thereafter, the commission approved, by a divided vote, Stew Leonard's application pursuant to § 381-43 of the Orange inland wetlands and watercourses regulations,[6] subject to twenty conditions, five of which, as noted by the majority and the trial court, were substan-

[6] Section 381-43 of the Orange inland wetlands and watercourses regulations provides: "In carrying out the purposes and policies of Sections 22a-36 to 22a-45, inclusive, of the Connecticut General Statutes, and pursuant to [General Statutes § 22a-41 (d)] a municipal inland wetlands agency shall deny or condition an application for a regulated activity in an area outside wetlands or watercourses on the basis of an impact or effect on aquatic, plant, or animal life unless such activity will likely impact or affect the physical characteristics of such wetlands or watercourses, including matters relating to regulating, licensing and enforcing of the provisions thereof, the [c]ommission shall consider all relevant facts and circumstances in making its decision on any application for a permit, including but not limited to the following:

"A. The environmental impact of the proposed regulated activity on wetlands or [watercourses].

"B. The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or [watercourses].

"C. The relationship between the short-termed and long-term impacts of the proposed regulated activity on wetlands or [watercourses] and the maintenance and enhancement of long-term productivity of such wetlands or [watercourses].

"D. Irreversible and irretrievable loss of wetland or [watercourse] resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to:

"(1) Prevent or minimize pollution or other environmental damage;

"(2) Maintain or enhance existing environmental quality; or

"(3) In the following order of priority: restore, enhance and create productive wetland or [watercourse] resources.

"E. The character and degree of injury to, or interference with, safety, health, or the reasonable use of the property which is caused or threatened by the proposed regulated activity.

"F. Impacts of the proposed regulated activity on wetlands or [watercourses] outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or [watercourses]."

tive in nature, and required Stew Leonard's to submit: (1) a "[r]evised and updated erosion control plan that implements all [s]tate [r]egulations"; (2) "[a]dditional detailed information" with respect to "the silt fence and hay bales"; (3) "[a] plan that addresses the placement of eco stone pavers and the winter sanding issues"; (4) a revised storm drainage plan addressing "[a]ny and all conflicts with soil, pipes, inverts and any other problems"; and (5) "a phasing plan [designed by its engineer] to minimize large disturbed areas and design the project to be constructed as practical[ly] as possible without leaving large areas open for erosion." The commission, as stated by Frederick O'Brien, its chairman, viewed its vote approving the application as "a finding that the [plaintiffs] had not carried their burden of proving the application would [cause] unreasonable damage to the wetlands."

I agree with the majority's statement of the relevant standard of review of decisions made by inland wetlands commissions, namely, that, "[i]n challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . .

"In reviewing an inland wetlands agency decision made pursuant to the [Inland Wetlands and Watercourses Act], the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative

agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 584, 821 A.2d 734 (2003); accord *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587–88, 628 A.2d 1286 (1993); see also *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 71, 848 A.2d 395 (2004) ("[e]vidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence").

Furthermore, "it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that commission to determine if there is an adequate basis for its decision. . . . In reaching this conclusion, we analogized cases and statutory language governing planning and zoning agencies to those governing inland wetland agencies and found the two statutory schemes to be either identical or extremely similar. . . . We also determined that public policy reasons make it practical and fair to have a trial court on appeal search the record of a local land use body . . . composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate."[7]

---

[7] The determination of "[w]hether the substantial evidence test was applied properly by the trial court in its review of the [commission's] decision

(Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 588–89.

I agree with the majority's emphasis on the degree of the application's regulatory compliance,[8] because "when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under [the Connecticut Environmental Protection Act], whether the conduct is unreasonable under [that act] will depend on whether it complies with that scheme." *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002); see also *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 293, 933 A.2d 256 (2007) ("a determination that the work was required to be, but was not, in compliance with the substantive provisions of the applicable inland wetlands regulations could support a finding that it constituted unreasonable pollution under [the Connecticut Environmental Protection Act]").

is a question of law over which our review is plenary." *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, supra, 269 Conn. 70.

[8] Citing *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 933 A.2d 256 (2007), the majority concludes that, "[i]t is clear . . . that if the wetlands agency has not made a determination, supported by substantial evidence, that the applicant's proposal complied with applicable statutes and regulations, a decision approving the permit cannot be sustained on appeal, regardless of whether the plaintiff has affirmatively established that the proposal will cause harm to the wetlands. We conclude . . . that an intervenor pursuant to [General Statutes] § 22a-19 can prevail on appeal not only by proving that the proposed development likely would cause harm to the wetlands, *but also by proving that the commission's decision was not based on a determination, supported by substantial evidence, that the development complied with governing statutes and regulations and would not cause such harm.*" (Emphasis added.) Noting the importance of erosion control to the protection of wetlands, the majority then determines that the plaintiffs have met this burden because "[i]t is implicit in the condition of approval requiring Stew Leonard's to submit a '[r]evised and updated erosion control plan that implements all [s]tate [r]egulations' that the commission had not determined that the existing erosion control plan met state regulations when it rendered its decision."

Moreover, it is clear that the applicable statutory and regulatory scheme authorizes local inland wetlands agencies, such as the commission, to condition the approval of an application on the satisfaction of specific conditions that "may include any reasonable measures which would mitigate the impacts of the regulated activity and which would (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources." General Statutes § 22a-42a (d) (1); see also Orange Inland Wetlands and Water Courses Regs., § 381-47 (same).[9] Indeed, in *Gardiner* v. *Conservation Commission*, 222 Conn. 98, 105–106, 608 A.2d 672 (1992), we recognized inland wetlands commissions' statutory authority to attach such conditions of approval, and rejected a constitutional challenge on fair hearing grounds by intervenors to conditions that required the submission of further information by the applicant after approval, noting that they afford "additional protection of the public interest"; id., 106; and that adoption of that view "would inhibit an inland wetlands agency in imposing such conditions as it deemed necessary to safeguard against the risk of pollution in the light of concerns raised during its deliberations." Id. Indeed, I agree with the majority's assessment of the conditions imposed in *Gardiner* as appropriately directed to the correction of particular deficiencies in the application.[10] Thus, the

---

[9] Section 381-47 of the Orange inland wetlands and watercourses regulations provides in relevant part: "The [c]ommission . . . may grant the application . . . upon such terms, conditions, limitations or modifications necessary to carry out the purposes of the [Inland Wetlands and Watercourses Act] . . . . Such terms may include any reasonable measures which would mitigate the impacts of the regulated activity and which would prevent or minimize pollution or other environmental damage, maintain or enhance existing environmental quality, or, in the following order of priority: restore, enhance and create productive wetland or [watercourse] resources. . . ."

[10] In *Gardiner*, the commission had imposed conditions "requiring a subsurface investigation of the location proposed for one detention basin

commission had the general authority pursuant to § 22a-42a (d) (1) to facilitate the progress of applications that otherwise would fail to comply with the comprehensive environmental regulatory scheme by conditioning their approval on the implementation of measures to cure those deficiencies.

Although I agree with the trial court's assessment of the approval process before the commission as cautious and thorough,[11] some of the conditions imposed by the commission in this case fail to illuminate or cure specific deficiencies in Stew Leonard's application, and leave me wondering about the extent to which the application complies with the applicable regulations. Like the majority, I begin specifically with the first substantive condition, which requires Stew Leonard's to submit a "[r]evised and updated erosion plan that implements all [s]tate [r]egulations." The majority assumes, based on the language of the condition, that the erosion control plan that had been submitted by Stew Leonard's necessarily did not comply with the relevant state regulations, and therefore, the commission's decision to approve the plan could not have been supported by substantial evidence. I am reluctant to rest my decision solely on this assumption given our long-standing deference to land use commissions' technical decisions, as well as our well rooted understanding that these com-

because of its proximity to a landfill and a special design of that basin," a precautionary water monitoring program, and "the submission of engineering calculations to substantiate the structural integrity of the basins." *Gardiner* v. *Conservation Commission*, supra, 222 Conn. 105–106.

[11] In concluding that "there was substantial evidence to support everything that the [commission] has allowed" in "the form of a concern, which was apparently assuaged or alleviated by the responses, or change of intention, or change of design," the trial court noted the professional backgrounds of the commission's members, as well as the fact that it had hired Delta, an engineering firm, as its own independent consultant. Accordingly, the trial court stated that its review of the record left it "with the overriding impression of a rather thoroughly vetted panoply of issues with an abundance of expertise presenting and residing in the [commission] itself."

missions frequently are composed of legal laypersons, whose technical expertise lies in areas beyond legal procedure. See, e.g., *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 588–89. Thus, like the trial court, I recognize the need to go beyond this assumption and to conduct an independent review of the record, despite the commission's failure to state the reason for its approval of the application; see id.; to determine whether it was supported by substantial evidence.

Having conducted that review of the record, I conclude that there are two reasons to conclude that the commission's decision was not supported by substantial evidence. First, although Stew Leonard's application, at least with respect to the pond plan, professes to have an erosion control plan designed in accordance with the guidelines, the district and Delta both requested that the plan be revised to conform to those same guidelines, and there is no indication that the commission found that the specific revisions made by Stew Leonard's in response were in fact compliant, especially given the language of the condition as noted by the majority. Moreover, it is clear that the no pond plan lacked an erosion control plan, which was subsequently to be submitted by Stew Leonard's after approval of the application. Finally, the broad condition poses significant difficulties for reviewing courts because it did not identify specific deficiencies to be remedied, a flaw exacerbated by the commission's failure to explain to this court how the plan as approved complies with the technical specifications contained in the voluminous guidelines, which are more than 350 pages in length.[12] Reading the record, I am convinced

---

[12] The commission argues that "the [concern] with regard to the condition that a revised and updated erosion control plan be submitted is baseless since it was proper for the commission to impose such a condition to insure that the approved site activities conducted were in compliance with the regulations." The commission also contends that the imposition of this and other conditions was the result of the "plaintiffs' own input during the public hearing process," and that "the conditions of approval . . . were ministerial

that the commission effectively "punted" review of the erosion control plan in light of the looming statutory deadline, a subject that was a significant topic of discussion during the hearings. Accordingly, there is no way that I can conclude that the commission's decision was supported by substantial evidence, and I concur with the majority's decision to that effect.

in nature being the intention of the commission that the additional information would be submitted for review in a further effort to insure further safeguards against any risk of impairment or pollution associated with the contemplated activities." Although further safeguards are a proper condition to impose, as worded, the condition at issue herein directs compliance with an entire regulatory scheme, which indicates that it is more than just a further safeguard or "housekeeping" task.